# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDMOND JACKSON, ) | |
| ) | Civil Action No. 14 – 1448 |
| Petitioner, ) | |
| ) | District Judge Joy Flowers Conti |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| JON FISHER, *Superintendent SCI* ) | |
| *Smithfield* and THE ATTORNEY ) | |
| GENERAL OF THE STATE OF ) | |
| PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Edmond Jackson (ECF No. 5) be denied and that a Certificate of Appealability also be denied.[1]

### II. REPORT

Before this Court is a Petition for Writ of Habeas Corpus filed by Petitioner Edmond Jackson ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 5.) Petitioner challenges his judgment of sentence of twenty-seven to fifty-four months imprisonment entered on June 7, 2012, in the Court of Common Pleas of Fayette County, docketed at CP-26-CR-0001871-2011,

---

[1] The Court originally entered a Report & Recommendation (ECF No. 15) recommending dismissal of this matter as untimely. Petitioner filed Objections (ECF No. 16) averring that he mailed his Petition in a timely manner on September 10, 2014; however, the Petition was returned to him with an indication that he sent it to an expired address. He resent the Petition in October 2014. He requests equitable tolling. Rather than address the equitable tolling argument, the Court has chosen to address the Petition on the merits.

1

for two counts of harassment and two counts of aggravated harassment by a prisoner.[2] For the following reasons, Petitioner's application for federal habeas corpus relief should be denied.

## A. Background

On February 14, 2011, Petitioner threw a container of urine and feces at two corrections officers when they came to pick up his food tray in the restricted housing unit of SCI Fayette. The incident was recorded on video surveillance tape. After trial, a jury convicted Petitioner of two counts of aggravated harassment by a prisoner. The court also found Petitioner guilty of two counts of harassment as a summary offense. On June 7, 2012, the court sentenced Petitioner to an aggregate sentence of incarceration of not less than twenty-seven nor more than fifty-four months, to be served consecutively to the previous, unrelated sentence he was already serving. That same day, Petitioner signed a "Rejection of Appeal" form provided by the Public Defender's office stating that he did not wish to file an appeal.

On May 31, 2013, Petitioner filed a timely *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), alleging insufficient evidence, a weight claim, and ineffective assistance of trial counsel. The court appointed counsel who filed a no-merit letter and a motion to withdraw from representation on August 9, 2013. The PCRA court granted counsel's motion and entered its notice of intent to dismiss Petitioner's PCRA petition without a hearing on August 19, 2013. Petitioner filed a *pro se* objection to the notice of intent to dismiss on August 26, 2013. The PCRA court dismissed the petition on September 11, 2013. A timely appeal followed wherein the Superior Court of Pennsylvania affirmed the judgment of the PCRA

---

[2] This sentence was ordered to run consecutively to the previous unrelated sentence he was already serving.

court on March 6, 2014. The Supreme Court of Pennsylvania denied Petitioner's Petition for Allowance of Appeal on August 20, 2014.

Petitioner initiated these federal habeas corpus proceedings on October 24, 2014. His Petition for Writ of Habeas Corpus raises four claims summarized as follows:

1. Ineffective assistance of PCRA counsel for failing to raise a claim that trial counsel was ineffective for allowing Petitioner to testify.

2. Trial counsel coerced Petitioner into waiving his direct appeal rights.

3. Failure to provide Petitioner with a transcript.

4. Ineffective assistance of PCRA counsel for failing to raise a claim that trial counsel as ineffective concerning a Batson challenge.

Respondents filed an Answer to the Petition on December 27, 2014.

B. **Federal Habeas Corpus Standard of Review**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was *contrary to,*[3] or involved an unreasonable application of,[4] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[3] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing

> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.[5]

(Emphasis added). Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), under 28 U.S.C. § 2254(e)(1) a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by "clear and convincing evidence." *See*, *e.g.*, Palmer

---

Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. *See* Kane v. Garcia Espitia, 546 U.S. 9 (1995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[4] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[5] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

4

v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

### C. Ineffective Assistance of Counsel Standard

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often

5

be so, that course should be followed." 466 U.S. at 697. In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . . In every case the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696.

### D. Discussion

#### 1. Ineffective assistance of PCRA counsel for failing to raise a claim that trial counsel was ineffective for allowing Petitioner to testify.

Petitioner's first claim is that PCRA counsel was ineffective for failing to raise a claim that trial counsel was ineffective for allowing him to testify. Specifically, Petitioner claims that he was mentally incompetent, schizophrenic and heavily medicated with psychoactive drugs when he took the witness stand. The Superior Court of Pennsylvania addressed this claim as follows:

> Here, in his layered claim of ineffectiveness, Appellant "avers that had trial counsel not placed him on the witness stand to testify about events he did not recollect and/or would have presented expert testimony as to his mental state [as] competent and/or incompetent during the alleged criminal episode there's a great possibility that the final outcome of trial would have been different." (Appellant's Brief, at 12 (citations omitted)). This claim is unsupported and speculative, especially in light of the surveillance videotape of the incident which was played for the jury. (*See* N.T. Trial, 6/07/12, at 79). Furthermore, this allegation is belied by trial counsel's conduct at trial.
>
> Preliminarily, we note that, at the beginning of the trial, counsel stated that "[Appellant] has indicated to me that he does suffer from some mental disorders and those mental disorders were affecting his ability to comprehend at the time of this incident." (N.T. Trial, 6/06/12, at 7-8). The court gave Appellant the opportunity to explain that he was prescribed medication for, *inter alia*, chronic paranoid schizophrenia. (*Id*. at 9, 80). Appellant testified that he acts out if he is not medicated, and that on the day of the assault he was not taking his medications because of their side effects. (*See id*. at 9, 81, 83, 84). Appellant testified that he had no recollection of what happened that day. (*Id*. at 84). Therefore, the issues of Appellant's mental competence and ability to recall

6

events were squarely before the jury. (*See* Appellant's Brief, at 12). Furthermore, as observed by PCRA counsel, "[h]is testimony that he had no memory of that day was the basis of his defense." (Brief in Support of Motion to Withdraw, 8/09/13, at unnumbered page 9).

Thus, trial counsel's strategy to place Appellant on the stand had a reasonable basis, i.e., to establish his defense to the charges of harassment. *See Matias*, *supra* at 810. His own testimony presented his claim of mental illness and his mental state at the time of the incident. Appellant fails to demonstrate why additional expert testimony would have offered a potential for success substantially greater than the course counsel actually pursued. *See Hammond*, *supra* at 558. Appellant's mere speculation that expert testimony would have changed the outcome of his trial fails to overcome the presumption of counsel's effectiveness. *See Bennett*, *supra* at 1195. Thus, where trial counsel did not render ineffective assistance, neither did PCRA counsel for failing to pursue this issue. *See Rykard*, *supra* at 1189-90. Furthermore, he has failed to prove prejudice. *Id*. Appellant's first layered claim of ineffective assistance for placing him on the witness stand does not merit relief.

(Resp't Ex. 6, ECF No. 13-6 at pp.6-8.)

Because the state courts rejected Petitioner's ineffective assistance of counsel claim on the merits, this Court must review it under AEDPA's standard of review, which is set forth at 28 U.S.C. § 2254 and in section B, *supra*.

Under AEDPA, review is to proceed as follows.

. . . . "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo,* 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.* (quoting *Matteo,* 171 F.3d at 888). "If we determine that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Id.* (citing *Matteo,* 171 F.3d at 888). In performing this inquiry, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits,

7

resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v. Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts v. Vaughn, 228 F.3d 178, 196-97 (2000)).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland, *supra*, and the state court applied this standard to Petitioner's ineffectiveness claim.[6] With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to his ineffectiveness claim, and therefore, the state courts' adjudication of this claim was not "contrary to" Strickland. *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dipositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claim was an "unreasonable application" of Strickland. It was not. In order to overcome AEDPA's standard of review, Petitioner must show that the state courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Matteo, 171 F.3d at 890, and, he falls far short of meeting this burden. The state court's

---

[6] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See* Werts, 228 F.3d at 202–03.

8

disposition of this ineffectiveness claim was neither an unreasonable application of Strickland, nor was the state court's decision an unreasonable determination of the facts in light of the evidence presented. Petitioner has thus failed to meet his burden under 28 U.S.C. § 2254(d) and relief should be denied.

**2. Trial counsel coerced Petitioner into waiving his direct appeal rights.**

Second, Petitioner argues that, while he was heavily medicated, trial counsel coerced him into waiving his direct appeal rights in order to cover up his own ineffectiveness by telling Petitioner that he did not have any meritorious appellate claims. As to this claim the Superior Court found as follows:

> . . . . Appellant "avers that his trial counsel coerced him into waiver of his direct appellate rights" by advising him to sign a rejection of appeal form. (Appellant's Brief, at 19; *see id*. at 19-22). We disagree.
>
> It is well-settled that where a defendant requests a direct appeal and counsel fails to file one, a presumption of prejudice arises regardless of the merits of the underlying issues. *See Commonwealth v. Lantzy*, 736 A.2d 564, 571 (Pa. 1999).
>
> However, here, on June 7, 2012, on the day of his guilty verdict and sentencing, Appellant signed a "Rejection of Appeal" form, duly witnessed, stating that he "[did] not want the Public Defender's office to file an appeal on [his] case." (Motion to Withdraw, 8/09/13, at Exhibit 1 ("Rejection of Appeal")). Appellant now claims that he was "suffering from mental illness and heavily sedated with psychoactive drugs," (Appellant's Brief, at 19), and denies that he was, in fact, sufficiently fit to testify at trial that same day. (N.T. Trial, 6/07/12, at 7-10, 80-84; *cf. id*. at 11 (Commonwealth observing that Appellant had filed a sophisticated pro se memorandum of law in support of petition for writ of *habeas corpus* that cited legal authority and discussed the facts of his case)).
>
> However, Appellant fails to develop an argument that his self-described mental illness had a causal effect on his capacity to execute a knowing and intelligent waiver of his direct appeal rights. (*See* Appellant's Brief, at 20). Further, Appellant presents no support whatsoever for his companion claims of coercion and fraudulent inducement. (*Id*. at 20-21). To the contrary, Appellant baldly asserts that he was not responsible for his actions when he voluntarily went

9

off his medications, nor was he responsible for his actions when he resumed them. (*Id*. at 20-22).

Furthermore, notably, Appellant took no further action in this case until he filed a pro se PCRA petition nearly a year later, on May 31, 2013. During that entire time, Appellant never articulated that he wished to file a direct appeal. *See Lantzy*, *supra* at 571. Thus, trial counsel was not deficient or ineffective by relying on his waiver form. *See Bennett*, *supra* at 1195. The record supports the PCRA court's determination that Appellant is not entitled to relief on this claim. *See Heilman*, *supra* at 544. The PCRA court properly dismissed Appellant's petition without a hearing.

(Resp't Ex. 6, ECF No. 13-6 at pp.11-13.)

Petitioner has not demonstrated that the state court's decision was contrary to or an unreasonable application of clearly established Federal law, nor has he demonstrated that the decision was an unreasonable application of the facts in light of the evidence presented. Accordingly, Petitioner has failed to meet his burden under both 28 U.S.C. § 2254(d).

### 3. Right to a transcript

Third, Petitioner argues that he should have been provided a transcript of his voir dire, trial, closing arguments, and jury instructions. He avers that he was not provided a meaningful PCRA review of his conviction and sentence because the state failed to issue him a full and accurate record. On appeal, the Superior Court found as follows:

. . . . Appellant "avers that he is entitled to a full state court record as a fundamental prerequisite to the fair adjudication of his post conviction claims." (Appellant's Brief, at 16). Appellant's claim does not present a basis for PCRA relief. *See* 42 Pa.C.S.A. § 9543(a)(2)(i)-(viii). Therefore, this claim fails. Moreover, it would not merit relief.

In order to ensure a defendant's right to meaningful appellate review, this Court requires that he or she be furnished a full transcript or other equivalent picture of the trial proceedings. With this in mind, it is settled law that in order for a defendant to establish entitlement to relief based on the incompleteness of the trial record, he must first make some potentially meritorious

10

> challenge which cannot be adequately reviewed due to the
> deficiency in the [record].
>
> *Commonwealth v. Paxton*, 821 A.2d 594, 596 (Pa. Super. 2003), *appeal denied*,
> 847 A.2d 1282 (Pa. 2004) (citations omitted); *see also Commonwealth v. Hughes*,
> 865 A.2d 761, 785 (Pa. 2004) (concluding that, on collateral review of ineffective
> assistance of counsel challenge with no identifiable, specific error for review,
> mere conjecture does not establish a petitioner's entitlement to relief on request
> for transcripts, given the presumption of effectiveness).
>
> Here, Appellant fails to raise any meritorious challenge that cannot be
> reviewed due to a deficiency in the record. He merely argues that "myraid [sic] of
> errors may have occurred during *voir dire*[, ] trial[, ] closing arguments of both
> attorneys' [sic] and final instructions from the trial court, and sentencing but
> without his being afforded a full transcript by the state he is unable to glean what
> actually had taken place at his 2012 trial." (Appellant's Brief, at 17).
> Furthermore, the cases on which Appellant relies are inapposite because they refer
> to a right to meaningful appellate review where all or portions of the transcripts
> were missing from the certified record. (*See id*. at 18 (citing, *inter alia*,
> *Commonwealth v. Goldsmith*, 304 A.2d 478 (Pa. 1973))); *cf*. Pa.R.J.A. 5000.2(g)
> (defining requirements for trial transcription). Here, Appellant raised only a
> general allegation of ineffective assistance of counsel in his PCRA petition, and
> thus, has not established that he is entitled to the transcripts. (*See Pro Se* PCRA
> Petiiton, 5/31/13, at 3); *see Hughes*, *supra* at 785; *Goldsmith*, *supra* at 480. Thus,
> this third issue does not present a cognizable PCRA claim and would not merit
> relief.

(Resp't Ex. 6, ECF No. 13-6 at pp.9-10.)

In support of his argument, Petitioner relies solely on Hardy v. United States, 375 U.S. 277 (1964), in which the Supreme Court held that a federal statute required federal defendants, who have new counsel on appeal and present non-frivolous issues, to be provided with a full transcript on appeal. Id. at 282. The Court in Hardy, however, expressly limited its holding to the statute at issue and did "not reach a consideration of constitutional requirements." Id. Accordingly, Hardy is not a rule of constitutional law and is not the law to be applied in this case. See Karabin v. Petsock, 785 F.2d 966, 969 (3d Cir. 1985); *see also* Fahy v. Horn, 516 F.3d 169, 190 (3d Cir. 2008) (rejecting argument that Supreme Court precedent requires an automatic

11

retrial when a portion of the transcript is missing); Scott v. Elo, 302 F.3d 598, 604 (6th Cir. 2002) (same).

Furthermore, Petitioner's claim is made in the context of collateral review, not direct appeal. While a defendant must be provided with a complete transcript or some "other equivalent picture of the trial proceedings" to assure meaningful appellate review, Commonwealth v. Shields, 383 A.2d 844, 846 (1978), no such constitutional requirement exist for collateral review. *See also*, Mayer v. City of Chicago, 404 U.S. 189, 194 (1971) (An indigent criminal defendant must be provided with "a 'record of sufficient completeness' to permit proper consideration of [his] claims" brought on appeal.) (quoting Draper v. Washington, 372 U.S. 487, 499 (1963)). Therefore, this claim fails because Petitioner cannot point to any "clearly established Federal law" requiring the state to provide an indigent defendant with a complete trial transcript for purposes of collateral review. Therefore, habeas relief is unavailable to Petitioner under the standard of review set forth in 28 U.S.C. § 2254(d).

### 4. **Ineffective assistance of PCRA counsel for failing to raise a claim that trial counsel was ineffective concerning a Batson challenge.**

Finally, Petitioner argues that his PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness concerning a *Batson* challenge. With respect to this claim, the Superior Court found as follows:

> . . . . Appellant alleges that "PCRA counsel rendered ineffective assistance of counsel when she failed to raise trial counsel's ineffectiveness for not objecting to the manner in which the prosecutor exercised its peremptory challenges during *voir dire* selection." (Appellant's Brief, at 13-14 (citing *Batson v. Kentucky*, 476 U.S. 79 (1986))). We disagree.
>
> Preliminarily, we observe that Appellant did not include this claim in his PCRA petition. *See Commonwealth v. Williams*, 899 A.2d 1060, 1066 n.5 (Pa. 2006) (holding that issues not raised in PCRA petition cannot be considered for first time on appeal); *see also* Pa.R.A.P. 302(a); 42 Pa.C.S.A. § 9544(b).

> Appellant first raised a *Batson* claim in his response to the PCRA court's notice of intent to dismiss. (*See Pro Se* PCRA Petition, 5/31/13; *see also Pro Se* "Objection", 8/26/13, at 1). Therefore, he has waived the underlying issue of whether trial counsel was ineffective for failing to object to the Commonwealth's use of peremptory challenges. *See Commonwealth v. Rigg*, 2014 Pa. Super. Lexis 18 at *8 (Pa. Super. 2014).
>
> Furthermore, Appellant claims that PCRA counsel was "ineffective for failing to file an amended PCRA petition raising whether his equal protection rights under *Batson* were violated." (Appellant's Brief, at 15); *see also Rykard*, *supra* at 1189 (permitting challenge to PCRA counsel ineffectiveness first raised in response to notice of intent to dismiss). However, his claim that counsel failed to raise a *Batson* objection at trial is belied by the record. (*See* N.T. Trial, 6/06/12, at 4 ("Your Honor, . . . I am going to raise a *Batson* challenge . . . .")). Appellant's underlying claim is therefore frivolous, and his layered claim of PCRA counsel ineffectiveness is without merit. *See Rykard*, *supra* at 1190 ("If [trial counsel] was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue."). Accordingly, Appellant's second issue does not merit relief.

(Resp't Ex. 6, ECF No. 13-6 at pp.8-9.)

Petitioner argues that the prosecutor used his peremptory challenges to strike African Americans and Latinos venire persons from the jury. Specifically, he claims that of the 25-30 venire persons that were questioned, there were 3 African Americans and 1 Latino, and the prosecutor used his peremptory challenges to remove 2 of the 3 African Americans and the 1 Latino. However, 1 African American was selected for the jury. Petitioner contends that trial counsel should have raised a challenge pursuant to Batson v. Kentucky, 476 U.S. 1052 (1986), in which the United States Supreme Court determined that racial discrimination in jury selection offends the Equal Protection Clause in that the Equal Protection Clause forbids the prosecution from engaging in purposeful discrimination on the basis of race in exercising peremptory challenges.

13

It is first noted that Petitioner's claim is procedurally defaulted because it was not raised in his PCRA petition, but instead raised for the first time in his PCRA appeal.[7] However, the United States Supreme Court has held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural

---

[7] The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman, 501 U.S. at 731. See also O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). The petitioner must demonstrate that he raised the claim in the proper state forums through the proper vehicle, not just that he raised a federal constitutional claim before a state court at some point. O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).

If a petitioner has failed to properly exhaust his claim – for example, he failed to comply with a state procedural rule such as Pa. R.A.P. 302(a)'s waiver rule – and as a result the state court declined to adjudicate the claim on the merits, the claim is defaulted in federal habeas corpus under the procedural default doctrine. See, e.g., Coleman, 501 U.S. at 730; O'Sullivan, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine). The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

State procedural grounds for denying a PCRA claim include, but are not limited to, the PCRA's timeliness requirement, 42 Pa.C.S. § 9545(b), failing to adequately develop the claim in one's briefing, Commonwealth v. Bracey, 795 A.2d 935, 940 n. 4 (Pa. 2001); Pa. R.A.P. 2116, 2119(a), and presenting claim on appeal without having presented it to the lower court, Commonwealth v. Wharton, 811 A.2d 978, 990 (Pa. 2002); Pa. R.A.P. 302(a).

default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012). Although Martinez serves as a potential basis for establishing "cause and prejudice" to excuse a procedural default, the default can only be overcome if the petitioner demonstrates "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 1318. Therefore, Petitioner must establish that the claim that he contends PCRA counsel should have raised – that trial counsel was ineffective for failing to raise a Batson challenge – was a "substantial one". Petitioner cannot meet this burden because there is not even a question as to whether trial counsel was ineffective under the standards of Strickland. Counsel's performance was not deficient because he in fact raised a Batson challenge during *voir dire*. Furthermore, Petitioner cannot demonstrate prejudice – that the outcome of his trial would have been different – because there was a surveillance video of the incident that was the subject of the trial. As such, this claim remains procedurally defaulted and is not subject to federal habeas review.

### E. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537

15

U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner Edmond Jackson (ECF No. 5) be denied and that a Certificate of Appealability also be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Petitioner shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Petitioner's failure to file timely objections will constitute a waiver of his appellate rights.

Dated: August 19, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Edmond Jackson
 GS7050
 SCI Mahanoy

301 Morea Road
Frackville, PA 17932

Counsel of record
*Via CM/ECF electronic mail*